UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| **Karvia A. Hamilton, 04-A-5214,** | |
| Plaintiff, | **DECISION AND ORDER** |
| -vs- | |
| | **10-CV-6234 CJS** |
| **M. Erhardt, J. Cartwright, James Conway, W. Murray, and Brian Fischer,** | |
| Defendants. | |

_____

## INTRODUCTION

Karvia A. Hamilton ("Plaintiff"), a prison inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Sergeant M. Erhardt ("Erhardt"), Corrections Officer J. Cartwright ("Cartwright"), Superintendent James Conway ("Conway"), Lieutenant W. Murray ("Murray"), and DOCS Commissioner Brian Fischer ("Fischer"), for alleged violations of his rights under the First, Eighth, and Fourteenth Amendments. (Docket No [# 1]). Now before the Court is Defendant's motion to dismiss. (Docket No [# 4]). For the reasons that follow, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

Unless otherwise noted the following facts are taken from the complaint and are assumed to be true for purposes of this motion. At all times relevant Plaintiff was housed at Attica Correctional Facility ("Attica"). Plaintiff is a member of the Rastafarian religion, and his DOCS records indicate that fact. (Docket No [# 8] pg 6). One established tenet of the Rastafarian religion is the belief against trimming beards.

1

Directive 4914 of the New York Official Compilation of Codes, Rules and Regulations, generally prohibits inmates from growing their beards longer than one-inch.  However, the Directive states that an inmate may grow a beard longer than one inch if the inmate is granted an exemption based upon his documented membership in a religion which has a tenet against the trimming of beards.  Inmates who are granted exemptions are issued beard permits by the Deputy Commissioner for Correctional Facilities. Specifically, Directive 4914 states, in pertinent part:

> Beards and Mustaches:  An inmate may grow a beard and/or mustache, but beard/mustache hair may not exceed one (1) inch in length unless
> a. the inmate has a court order restraining the Department from enforcement; or
> b. the inmate has requested and received an exemption based upon his or her documented membership in a religion which has an established tenet against the trimming of beards including but not limited to inmates who are Rastafarian, Orthodox Jew or Muslim.  All inmate requests for such exemption shall be referred to and reviewed by Counsel's Office after consultation with the facility chaplain.  After such review, Counsel's Office will make a recommendation to the Deputy Commissioner for Correctional Facilities.  If the request is approved by the Deputy Commissioner for Correctional Facilities, a permit will be issued to the inmate.
>
> Further, pending Counsel's Office determination of requests for exemption from the one (1) inch rule, inmates shall not be required to cut or time their beards, or [be] disciplined for refusing the order to shave or subject to repeat orders to shave.
>
> An inmate who refuses to comply with this rule will be given 14 days from the date of the written order to shave in which to request an exemption.  If the inmate fails to submit a request for an exemption within 14 days, he may be disciplined for refusal to obey such order.

> Copies of the written order, an inmate's request for exemption and the exemption will be filed in the inmate's legal file.

(DOCS Inmate Grooming Standards, Docket No [#8], 11). On January 19, 2007 Plaintiff requested an exemption to the general beard rule, but never received approval or a permit. (Docket No [#8], pg 8). Plaintiff apparently also made another such request, the date of which is unclear.

On October 10, 2008 Erhardt told Plaintiff that if Plaintiff did not cut his beard to comply with Directive 4914, he would not be allowed in Attica's recreation yard. (Docket No [#1], pg 6). Plaintiff told Erhardt that growing his hair and beard was part of his religious beliefs, but Erhardt said that he did not care. *Id.* Cartwright was present at the time and laughed at Erhardt's comments. *Id.*[1] Erhardt then ordered Plaintiff back to his cell without allowing him any time in the recreation yard. *Id.*[2]

On October 12, 2008 Cartwright denied Plaintiff access to the recreation yard, after Plaintiff failed to produce a beard exemption permit. (Docket No [#1], pg 6). Cartwright asked Plaintiff if he had the required permit, and Plaintiff responded by saying that he did not need a permit because it was part of his Rastafarian religion to refrain from cutting his beard. *Id.* At that point Cartwright ordered Plaintiff back to his cell. *Id.*

On October 15, 2008 Erhardt told Plaintiff that if he did not cut his beard he would be written up for disobeying a direct order and for growing his beard over one inch. (Docket

---

[1] Although it does not appear to be relevant to the instant case, Plaintiff indicates that, previously, on September 25, 2007, Cartwright searched Plaintiff's cell and confiscated contraband as well as religious articles. (Docket No [#1], pg 10). Plaintiff also claimed that during the search Cartwright threatened and choked him. *Id.* Plaintiff filed an inmate grievance, and on October 25, 2007 the grievance was denied. (Docket No [#1], pg 13). In this action Plaintiff does not allege that Cartwright's actions are retaliatory or otherwise connected to this earlier incident.

[2] Plaintiff filed a grievance with regard to this incident and it was denied. Plaintiff appealed the grievance denial and that too was denied. (Docket No [#1], pg 17).

3

No [#1], pg 7). Additionally, Erhardt said that if Plaintiff did not cut his beard he could lose a few teeth or even his life. *Id.* Plaintiff responded by showing Erhardt paperwork indicating that he had twice requested a beard exemption pursuant to Directive 4914.[3] Plaintiff indicated that he had never received a response to his requests. Erhard nevertheless again ordered Plaintiff to shave his beard.

Shortly thereafter, Conway walked by Plaintiff's cell, and Plaintiff called out that he wanted to speak to Conway about having to shave his beard. Erhardt told Conway not to listen to Plaintiff, since Plaintiff just wanted to avoid shaving his beard, and Conway went away without speaking to Plaintiff.

Plaintiff proceeded to cut his beard, purportedly because he was scared of the consequences. *Id.* Nonetheless, Erhardt issued a misbehavior report to Plaintiff, charging him with disobeying a direct order[4], not keeping his beard shorter than one inch, and making false statements in regard to the whereabouts of his exemption or permit papers. (Docket No [#1], pg 8).

On October 17, 2008, Murray conducted a disciplinary hearing on the misbehavior report issued by Erhardt, and found Plaintiff guilty. Murray sentenced Plaintiff to fifteen days in "keeplock,"[5] which "is a form of administrative segregation in which the inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates." *Gittens v. Lefevre*, 891 F.2d 38, 39 (2d Cir. 1989). Plaintiff maintains that Murray was biased, because at the disciplinary hearing, Murray told him,

---

[3] Plaintiff does not allege that he previously told Erhardt or Cartwright that he had applied for a beard exemption permit. Instead, according to Plaintiff, he told Erhardt and Cartwright that he did not need a beard permit.
[4] There is no indication that Plaintiff was ever given a written order to shave.
[5] Docket No [#1], pg 8 and Document No [#6], pg 4.

"I know you are exercising your religion, but we[6] have to stick together as officers." (Docket No [#1], pg 29).

On April 28, 2010 Plaintiff commenced this action. (Docket No [# 1]).  Plaintiff asserts five claims: 1) a claim against Erhardt and Cartwright, alleging that they violated his First and Eighth Amendment rights on October 10, 2008; 2) a claim against Cartwright, alleging that he violated Plaintiff's Eighth Amendment rights on October 12, 2008; 3) a claim against Erhardt and Conway, alleging that they violated Plaintiff's Eighth and Fourteenth Amendment rights on October 15, 2008; 4) a claim against Murray, alleging that he violated Plaintiff's Eighth Amendment rights on October 17, 2008; and 5) a claim against Fischer, alleging that he violated Plaintiff's Eighth Amendment rights, by failing to properly train DOCS staff concerning Directive 4914.

Defendants filed the subject motion to dismiss, in which they raise three points: First, they maintain that Plaintiff's claims must be dismissed, because Directive 4914 is constitutional, and because Plaintiff violated that directive; second, they contend that all claims involving threats and verbal harassment must be dismissed, because they fail to state a constitutional claim; and third, they allege that the claims involving Plaintiff's disciplinary and sentence fail to state a constitutional claim.

## ANALYSIS

Defendant's motion to dismiss is brought pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim for which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct.1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a

---

[6]Presumably meaning he and Erhardt.

5

complaint states a plausible claim for relief will . . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S.Ct. at 1950. The Court does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570. "We construe plaintiffs' complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiffs' favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (citation and internal quotation marks omitted). "Even after *Twombly*, though, we remain obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

Defendants first maintain that the Complaint must be dismissed, because Directive 4914 is constitutional. However, Plaintiff is not challenging the constitutionality of Directive 4914. Accordingly, to the extent that Defendants' motion is based on the constitutionality of Directive 4914, it is denied. Alternatively, Defendants appear to argue that Plaintiff was clearly in violation of Directive 4914, and that Defendants' actions were therefore appropriate as a matter of law. However, the Court does not agree. For example, Directive 4914 states in pertinent part:

> All inmate requests for such exemption shall be referred to and reviewed by Counsel's Office after consultation with the facility chaplain. After such review, Counsel's Office will make a recommendation to the Deputy Commissioner for Correctional Facilities. If the request is approved by the Deputy Commissioner for Correctional Facilities, a permit will be issued to the inmate.
>
> Further, pending Counsel's Office determination of requests for exemption from the one (1) inch rule, inmates shall not be required to cut or time their beards, or [be] disciplined for

>refusing the order to shave or subject to repeat orders to shave.

The Court reads such language to indicate that once an inmate has requested a beard exemption, he shall not be subject to discipline until after Counsel's Office issues a decision. In this case, Erhardt allegedly caused Plaintiff to shave his beard even though he was aware that Plaintiff had twice requested an exemption and had never received a response from Counsel's Office.

Defendants next contend that all claims based on verbal threats and harassment must be dismissed. Section 1983 claims must allege: "(1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Dwares v. City of N.Y.*, 985 F.2d 94, 97 (2d Cir. 1993). While Defendants are clearly persons acting under color of state law, Plaintiff's allegations on October 10, 2008 and October 12, 2008 of harassment, threats, and verbal mocking do not rise to the Constitutional level of abuse that is required to successfully pursue a § 1983 case. "[V]erbal harassment, standing alone, does not amount to a constitutional deprivation," even where such verbal harassment pertains to the plaintiff's race or religion. *See, Cole v. Fischer*, No. 09-2897-pr, 379 Fed.Appx. 40, 43, 2010 WL 2130974 at *2 (2d Cir. May 27, 2010) (finding that allegations of verbal harassment and simultaneous physical abuse were sufficient to state a § 1983 claim). In the case at hand, the incidents that occurred on October 10, 2008 and October 12, 2008 involved only alleged verbal harassment by Erhardt and Cartwright, in which they told him to shave his beard, and in which Cartwright laughed at Plaintiff. Consequently,

7

the claims against Erhardt and Cartwright involving incidents on October 10, 2008 and October 12, 2008 are dismissed for failure to state a claim.

Defendants next maintain that the claim against Murray must be dismissed, since Plaintiff did not have a liberty interest in remaining free from confinement in keeplock for fifteen days.  In that regard, Plaintiff indicates that Murray improperly found him guilty of the disciplinary charges issued by Erhardt, and sentenced him to fifteen days in keeplock, after stating that the corrections staff needed to "stick together."  Although Plaintiff characterizes this claim as arising under the Eighth Amendment, the Court construes it as raising a procedural due process claim under the Fourteenth Amendment.

In that regard, it is "not require[d] that restrictive confinement within a prison be preceded by procedural due process protections unless the confinement subject[s] the prisoner to 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Colon v. Howard*, 215 F.3d 227, 230 (2d Cir. 2000) (citation omitted); *see also*, *Hanrahan v. Doling*, 331 F.3d 93, 97 (2d Cir. 2003) (Holding that "inmates retain due process rights in prison disciplinary proceedings . . . when disciplinary punishment 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" (*quoting Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293 (1995)).  There is no bright line rule to determine what would or would not subject a prisoner to atypical and significant hardship, although, in *Sandin v. Conner*, the Supreme Court held that an inmate's 30-day sentence in punitive segregation did not impose such a hardship. *Sandin v. Conner*, 115 S.Ct. at 2301. Moreover, cases in the Second Circuit indicate that a fifteen-day keeplock sentence

would not impose such a hardship. *See, Silva v. Sanford,* No. 91CIV.1776(AJP)(KMW), 1998 WL 205326 at *17 (S.D.N.Y. Apr. 24, 1998) ("Absent extraordinary circumstances, the cases unanimously hold that punishment of less than 60 days in SHU or keeplock does not constitute an atypical and significant hardship under Sandin.") (citations omitted); *see also, Fullwood v. Vosper*, No. 9:99CV1586, 2007 WL 119456 at *5 (N.D.N.Y. Jan. 9, 2007) ("In the Second Circuit, decisions unanimously have held that keeplock of thirty days or less in New York prisons is not an 'atypical or significant hardship' under *Sandin*.") (citation omitted). In the case at hand, Plaintiff's Complaint does not allege that he experienced unusually harsh conditions while in keeplock, therefore his fifteen-day keeplock sentence did not subject him to atypical and significant hardship. Accordingly, Plaintiff's procedural due process claim against Murray is dismissed.

## CONCLUSION

Defendant's motion [#4] to dismiss for failure to state a claim is granted in part and denied in part. Plaintiff's claims against Erhardt and Cartwright, arising on October 10, 2008 and October 12, 2008, respectively, are dismissed. Plaintiff's claim against Murray is also dismissed. Plaintiff's claims against Erhardt and Conway, arising on October 15, 2008, and his claim against Fischer, may go forward. The Clerk of the Court is directed to terminate Cartwright and Murray as parties to this action.

Dated: Rochester, New York
August 9, 2011

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge